Filed 6/30/22  P. v. Cardenas CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROGELIO JAVIER CARDENAS,<br><br>    Defendant and Appellant. | A161694<br><br>(Sonoma County Super. Ct.<br>No. SCR 32760-4) |

Defendant Rogelio Javier Cardenas appeals from the trial court's denial of his Penal Code[1] section 1170.95 petition to vacate his conviction for first degree murder and for resentencing.  Because the jury's special gang circumstance finding under section 190.2, subdivision (a)(22) establishes as a matter of law that Cardenas is ineligible for relief under section 1170.95, we conclude the trial court correctly denied the petition without issuing an order to show cause.  We therefore affirm.

### I. BACKGROUND

In 2005, following a jury trial, Cardenas and three other defendants were convicted of first degree murder.  The jury found true a special circumstance allegation that Cardenas and his codefendants intentionally

---

[1] All statutory references are to the Penal Code unless otherwise noted.

killed the victim while they were active participants in a criminal street gang and that the murder was carried out to further the activities of the criminal street gang (§ 190.2, subd. (a)(22)). At trial, the prosecution advanced three theories of liability for murder: (1) that each defendant was the actual perpetrator; (2) that each defendant was a direct aider and abettor; and (3) that each defendant was an indirect aider and abettor of one of five "target crimes" under the natural and probable consequences doctrine.[2]

The trial court sentenced Cardenas to 25 years to life in prison for first degree murder and 10 years for the gang enhancement (§ 190.2, subd. (a)(22)). In an unpublished 2009 opinion, this court struck the 10-year enhancement because it was an error to impose it where a 15-year limitation upon parole eligibility under section 186.22, subdivision (b)(5) should have applied instead. (*People v. Amante* (Sept. 3, 2009, A113655).) Cardenas's conviction for first degree murder was otherwise affirmed.

On January 28, 2019, Cardenas filed a petition under section 1170.95 to vacate his murder conviction and for resentencing. The prosecution opposed the petition and argued that Cardenas was ineligible for relief as a matter of law based on the jury's gang special circumstance finding.

On December 2, 2020, the trial court issued a written order denying the petition.[3] In its order, the court stated that the "special circumstance finding *alone* renders [Cardenas] ineligible for [section 1170.95] relief as a matter of law." The court reasoned that "[i]n finding the special circumstance to be

---

[2] The five "target crimes" were for (1) breach of peace; (2) assault; (3) battery; (4) assault with a deadly weapon; and (5) assault by means of force likely to produce great bodily injury.

[3] In this same order, the trial court also denied the petitions for relief under section 1170.95 of two of the three other defendants found guilty of first degree murder following the 2005 trial.

true, the jury necessarily determined that each of these petitioners 'intentionally killed' the victim and that each of these petitioners acted with the requisite 'malice' required for an aiding and abetting theory of murder." The court further found that Cardenas was ineligible for relief because this court's 2009 opinion on direct appeal "demonstrates as a matter of law that each of the petitioners *could be found guilty* under a valid theory of murder."

## II. DISCUSSION

### A. *Senate Bill 1437*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' ([Stats. 2018, ch. 1015, § 1,] subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847 (*Gentile*).)

To achieve this purpose, Senate Bill 1437 added three provisions to the Penal Code: "First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' . . .

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above."  (*Gentile, supra,* 10 Cal.5th at pp. 842–843.)

## B. *Section 1170.95 Petition*

"A person convicted of felony murder or murder under a natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition seeking to vacate the conviction "and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

4

Once the threshold requirements are satisfied under section 1170.95, subdivisions (a) and (b), the prosecutor files a response and the petitioner may submit a reply. Then, the trial court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c).)

If the trial court issues an order to show cause, it must hold an evidentiary hearing to determine whether the petitioner is entitled to relief. (§ 1170.95, subd. (d).) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)

### C. *Prima Facie Showing*

Since we are asked to determine whether Cardenas is precluded from relief under section 1170.95 as a matter of law, our review is de novo. (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, S264978.)

As explained in *People v. Duchine* (2021) 60 Cal.App.5th 798, 815, under section 1170.95, subdivision (c), "the prima facie showing the defendant must make is that he did not, in fact, act or harbor the mental state required, for a murder conviction under current law." Indeed, "[i]f a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden." (*Duchine*, at p. 813.)

5

The court may look at the record of conviction to determine whether a prima facie showing has been made, as the record "will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. (See Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)

Finally, as this court held, "section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury . . . ." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 247, review granted June 30, 2021, S268862. (*Secrease*).) At the prima facie stage, "the ultimate question is not a backward-looking inquiry into whether a past conviction finds support in substantial evidence." (*Id.* at p. 246.)

## D. *Whether the Trial Court Erred in Engaging in Factfinding*

In *Lewis,* our Supreme Court held that although appellate opinions are generally part of the record of conviction, "the probative value of an appellate opinion is case-specific" and that in reviewing the record, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

Section 1170.95, subdivision (d)(3), as amended by Senate Bill No. 775 (2021–2022 Reg. Sess.) clarified the holding in *Lewis* and provides that at the hearing to determine whether a petitioner is entitled to relief (after a prima facie showing is made), the court may consider "the procedural history of the case recited in any prior appellate opinion." However, "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder,

6

or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

Cardenas contends that the trial court erred in engaging in factfinding when it stated, as a secondary reason for denying Cardenas's petition, that there was sufficient evidence to support all three theories of murder based on this court's 2009 opinion. We agree that whether Cardenas *could* be found guilty under a valid theory of murder is not the proper issue to be addressed at the prima facie stage of a section 1170.95 proceeding. As this court held, "the ultimate question is not a backward-looking inquiry into whether a past conviction finds support in substantial evidence." (*Secrease*, *supra*, 63 Cal.App.5th at p. 246, review granted.) Rather, it is whether there is a prima facie case "that [the defendant] did not, in fact, act or harbor the mental state required, for a murder conviction under current law." (*People v. Duchine*, *supra*, 60 Cal.App.5th at p. 815.)

However, the trial court stated in its order as the first reason for denying Cardenas's petition that the gang special circumstance finding *alone* rendered him ineligible for relief under section 1170.95 as a matter of law. The court held that "[i]n finding the special circumstance true, the jury necessarily determined that each of these petitioners [referring to the three defendants who were convicted of this murder] 'intentionally killed' the victim and that each of these petitioners acted with the requisite 'malice' required for an aiding and abetting theory of murder." We agree and thus conclude it made no difference that the court also adopted a sufficiency of the evidence analysis in denying the petition.

### E. *Cardenas Is Ineligible for Relief as a Matter of Law Based on the Jury's Special Circumstance Finding*

As discussed above, the jury's special circumstance finding renders Cardenas ineligible for relief as a matter of law. At trial, the jury was

instructed that in order to return a true finding under section 190.2, subdivision (a)(22), the prosecution had to prove the following special circumstance beyond a reasonable doubt: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: Penal Code Section 190.2(a)(22): Intentional Killing by Active Street Gang Members." This finding states that defendant "intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).)

The jury was further instructed that if it did not find that Cardenas was the actual killer, or if it was unable to decide whether he was the actual killer or an aider and abettor, it "cannot find the special circumstance to be true as to that defendant unless [it is] satisfied beyond a reasonable doubt that [Cardenas] with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree." In its verdict, the jury found true the special circumstance as to each defendant, including Cardenas.

The above finding necessarily means that the jury found Cardenas to have been either the actual perpetrator or a direct aider and abettor to the killing, both of which require malice aforethought and remain valid theories of murder under the current law. (§ 188, subd. (a)(3); *Gentile, supra*, 10 Cal.5th at p. 848.) We find no merit to Cardenas's argument that because the prosecutor also proposed the natural and probable consequences theory to the jury, he was likely found guilty under this theory and therefore did not harbor the requisite malice for murder. Nothing in the record supports this claim. The prosecution was permitted to advance different theories of

murder at trial and did so when it asked the jury to consider whether Cardenas was the direct perpetrator, direct aider and abettor, or indirect aider and abettor of a target crime under the natural and probable consequences doctrine. There was nothing improper about this strategic approach.

Cardenas relies heavily on *People v. Brown* (2016) 247 Cal.App.4th 211 (*Brown*) and *People v. Offley* (2020) 48 Cal.App.5th 588, 599 (*Offley*) to support his position. These cases are distinguishable. In *Brown,* the issue there was whether error under *People v. Chiu* (2014) 59 Cal.4th 155, in the giving of a natural and probable consequences instruction, was prejudicial. The appellate court found it was prejudicial on the record presented. (*Brown*, *supra*, 247 Cal.App.4th at pp. 226–227.)

Granted, this case and *Brown* are broadly similar, at least at a general level, because in *Brown*, as here, there was a special circumstance verdict rendered under section 190.2, subdivision (a)(22). But the similarity ends there. We see a number of material points of distinction, starting with the fact that *Brown* predates Senate Bill 1437 and involves a harmless error issue that is fundamentally different than the section 1170.95, subdivision (c) prima facie case issue we are dealing with here. As is always the case with harmless error, the analysis employed in *Brown* required the sort of "backward-looking inquiry" we rejected in *Secrease*. (*Secrease*, *supra*, 63 Cal.App.5th at p. 246, review granted.)

Another striking distinction is that *Brown* involved a uniquely bizarre set of circumstances in the taking of the verdict.[4] In addition, as the trial

---

[4] As described by the appellate panel in *Brown*, the circumstances were as follows: "Late in the afternoon on January 2, 2014, the jury informed the court it reached a verdict, but that it preferred the court take the verdict the

court in this case pointed out, *Brown* "was a 'close case' where the evidence against defendant was 'not overwhelming' " on a record where "the fact that the jury's other (somewhat conflicting) firearm enhancement findings indicated it had rejected an 'actual perpetrator' theory" and "the jury [had] asked a question about the natural and probable consequences theory shortly before rendering its verdict . . . ." Together with the irregularities in the taking of the verdict, all of this explained why the *Chiu* error in *Brown* was not harmless beyond a reasonable doubt.

There are no comparable circumstances suggesting that the jury here relied on a natural and probable consequences aiding and abetting theory. We disagree with Cardenas that the jury's question to the trial court concerning the interplay of the first degree murder instruction and the natural and probable consequences instruction (when considered along with the court's answer to that question), suggest to the contrary. In fact, the

---

next day at 1:30 p.m. The bailiff obtained the verdict forms from the jury and gave them to the court to review 'for completeness.' The jurors were excused and ordered to return at 1:30 p.m. the next day. In reviewing the forms, the court observed the not guilty form for first degree murder had been signed and dated, but the signature and date had been crossed out and the words 'withdrawl [*sic*]' and 'void' had been written in large letters diagonally across the form. Without consulting with counsel, or even making counsel aware of the situation, the court sent the jury a note when it reconvened on January 3, 2014, at 1:30 p.m. The note stated, 'The "Not Guilty" form for Murder in the First Degree had "withdrawn void" handwritten across the form. The Court has taken out that form and replaced it with a clean copy.' The note continued, apparently because the foreperson did not sign either of the verdict forms for count two, 'As to Count 2, under tab # 2, please date and sign the appropriate form for the verdict you have reached or indicate to the court by a question that you are unable to reach a verdict on Count 2 and are therefore deadlocked.' " (*Brown, supra,* 247 Cal.App.4th at pp. 227–228.)

None of this was revealed to counsel until after the jury was excused. (*Brown, supra,* 247 Cal.App.4th at p. 228.)

appellate panel in *Brown*, in acknowledging how unusual the circumstances were, pointed out that, on a different record, it might have decided the *Chiu* error there was harmless. In making this point, the record the *Brown* court described is a good description of the record we have here: "It is possible in a given case," the *Brown* court explained, "to conclude the giving of an erroneous natural and probable consequences instruction was harmless beyond a reasonable doubt when the jury finds the defendant guilty of first degree murder *and* finds the gang special circumstance true, because the special circumstance required finding the defendant intentionally killed. In such a situation, it might be concluded the jury necessarily rejected the natural and probable consequences theory of aider and abettor liability and instead found the defendant was either the actual killer or aided and abetted the actual killer while sharing the killer's intent to kill." (*Brown*, *supra*, 247 Cal.App.4th at p. 226, italics in original.)

As for *Offley*, the jury there convicted the defendant of second degree murder and found true the firearm enhancement that "Offley personally and intentionally discharged a firearm, proximately causing great bodily injury and death to the victim. (§ 12022.53, subd. (d).)" (*Offley*, *supra*, 48 Cal.App.5th at p. 593.) The trial court denied Offley's section 1170.95 petition on that basis. (*Offley*, at p. 594.) The Second District reversed, finding that the firearm enhancement "does not establish as a matter of law that a defendant acted with malice aforethought." (*Id.* at p. 597.) Rather, the enhancement "provides that the defendant must have intended to discharge a firearm, but does not refer to an 'intent to achieve an additional consequence.' [Citation.] It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Id.* at p. 598.) Since the jury was instructed

11

on the natural and probable consequences doctrine, the court "[could not] rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting Offley." (*Id.* at p. 599.)

Here, the jury specifically found beyond a reasonable doubt, through the gang special circumstance finding, that Cardenas *intentionally killed* the victim. Unlike the firearm enhancement in *Offley*, the enhancement here required Cardenas to act with an intent to kill and therefore establishes that Cardenas acted with malice aforethought. This in turn necessarily means that the jury rejected the natural and probable consequences doctrine in convicting Cardenas of first degree murder.

## III. DISPOSITION

The trial court's order denying Cardenas's section 1170.95 petition is affirmed.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
BROWN, J.

12